IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| ZACHARY D. HARRISON, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v | : : | No. 13-5353 |
| DELGUERICO'S WRECKING & SALVAGE, INC. and TONY DELGUERICO, Individually, | : : : : | |
| Defendants. | : : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **MARCH 2, 2016**

      Presently before this Court is Defendants, DelGuerico's Wrecking & Salvage, Inc. and Tony DelGuerico's (collectively "Defendants"), "Motion For Decertification" and Plaintiffs, Zachary Harrison ("Named Plaintiff"), on his behalf and on behalf of the opt-in class members, Travis Coon, Joel Harrison, Zachary Harrison, Kayla Huhn, Tyler Keeping, Larry Snyder, Jr., and Justin Walsh's ("Opt-In Plaintiffs") (collectively "Plaintiffs"), Memorandum of Law in Opposition.  For the reasons set forth below, this Motion is granted.

**I.     BACKGROUND**

      On September 13, 2013, Named Plaintiff filed a Complaint alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  (See Compl. ¶ 4.)  Specifically, Named Plaintiff filed this action on behalf of himself and other similarly situated current and former employees of DelGuerico's Wrecking and Salvage, Inc. ("Defendant") pursuant to 29 U.S.C. § 216(b).  (Id. ¶ 11.)  On January 22, 2015, Named Plaintiff filed a Motion to Certify Class.

(Doc. No. 31.)  On March 18, 2015, this Court granted Named Plaintiff's Motion.  (Doc. No. 35.)  On June 30, 2015, in accordance with this ruling, Named Plaintiff filed 7 opt-in forms for the following individuals: (1) Travis Coon; (2) Joel Harrison; (3) Zachary Harrison; (4) Kayla Huhn; (5) Tyler Keeping; (6) Larry Snyder, Jr.; and (7) Justin Walsh.  (Doc. No. 36.)  Named Plaintiff alleges that Defendants failed to pay him and these similarly situated former and current employees overtime wages for a number of years, either claiming them as exempt employees under 29 U.S.C. § 213(b)(1) or misidentifying employees as independent contractors.  (See Compl. ¶¶ 20-22.)  Named Plaintiff asserts that, although he and these other employees often worked overtime hours, Defendants only compensated them with their "regular rate of pay" as defined by Section 207 of the FLSA.  (Id. at ¶ 20.)

Presently before this Court is Defendants' Motion for Decertification.  (Doc. No. 48.) Named Plaintiff alleges that since both he and Opt-In Plaintiffs were subject to the same policy of not being provided overtime pay, they are similarly situated.  (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 3.)  Defendants contend that Opt-In Plaintiffs are not similarly situated for several reasons.  Most notably, Defendants contend that Plaintiffs are not similarly situated due to the fact that not one Opt-In Plaintiff had a similar job to Named Plaintiff, as well as the various defenses applicable to the individual Plaintiffs.  (Defs.' Mot. for Decert. at 4-8.)

## II. STANDARD OF REVIEW

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013).  A collective action under the FLSA:

> may be maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated. No employee shall be a party

>plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Thus, the twin requirements for a class action to proceed under [§ 216(b)] are that the employees in the class must be 'similarly situated' and that each class member must file an individual consent." Sperling v. Hoffman–La Roche, Inc., 862 F.2d 439, 444 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989).

The United States Court of Appeals for the Third Circuit ("Third Circuit") "follow[s] a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." Camesi v. Univ. of Pitts. Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013). At the first step, the named plaintiff must make a "modest factual showing" that the employees identified in the complaint are "similarly situated." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 & n.4 (3d Cir. 2012). The court conducts a preliminary inquiry into whether the plaintiff's proposed class members were collectively "the victims of a single decision, policy, or plan." Ruehl v. Viacom, Inc., 500 F.3d 375, 388 (3rd Cir. 2007) (citing Sperling, 118 F.R.D. at 407). The plaintiff must produce some evidence "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3rd Cir. 2011), rev'd on other grounds, 133 S.Ct. 1523 (2013).

The plaintiff has "a very lenient burden to bear at this initial stage of certification." Lugo v. Farmer's Pride Inc., No. 07–0749, 2008 WL 638237, at *3 (E.D. Pa. Mar. 7, 2008); Smith v. Sovereign Bancorp, Inc., No. 03–2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) (stressing that "modest factual showing" is an "extremely lenient standard"). "The Court does not evaluate the merits of the claim at this stage." Lugo, 2008 WL 638237, at *3. "If the

plaintiff meets this lenient standard, the court grants only conditional certification for the purpose of notice and discovery." Id.

At the second stage, with the benefit of discovery, the court "makes a conclusive determination that every plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193. The plaintiff bears a heavier burden of proof at this second stage and must prove, by a preponderance of the evidence, that the proposed collective plaintiffs are similarly situated. Zavala, 691 F.3d at 537. In other words, named plaintiff must prove that it is "more likely than not" that the opt-in plaintiffs are similarly situated. Id. (citing Myer v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010); O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 584 (6th Cir. 2009)).

Taking an ad hoc approach, courts should "consider all the relevant factors and make a factual determination on a case-by-case basis." Id. The relevant factors include: "(1) whether the plaintiffs are employed in the same corporate department, division, and location; (2) whether they advance similar claims; (3) whether they seek substantially the same form of relief; and (4) whether they have similar salaries and circumstances of employment." Id. at 536-37. Plaintiffs may also be found dissimilar on the basis of case management issues, including individualized defenses. See Lusardi v. Lechner, 855 F.2d 1062, 1074-75 (3d Cir. 1988) ("Whether a class action is inappropriate . . . because of the disparate individual defenses . . . [is] entrusted to the district court's sound discretion."). Courts have also considered fairness and procedural considerations. Andrako v. U.S. Steel Corp., 788 F. Supp. 2d 372, 378 (W.D. Pa. 2011) (citing Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000)).

The requirement that the plaintiffs be similarly situated does not require that their situations be identical. Id. (stating that "similarly situated does not mean 'identically' situated").

Ultimately, the Court has to weigh all the factors and determine whether the similarities outweigh the differences. Garcia v. Freedom Mortg. Corp., 790 F. Supp. 2d 283, 287 (D.N.J. 2011) (finding plaintiffs were similarly situated since the differences were outweighed by the similarities).

> "Additionally, courts consider whether collective treatment will achieve the primary objectives of a § 216(b) collective action: '(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity.'"

Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 78-79 (D.N.J. 2014) (citing Sperling, 493 U.S. at 170).

Should the plaintiffs meet this level of proof, the case may proceed to trial on the merits as a collective action. Symczyk, 656 F.3d at 193. If the conditional group of plaintiffs are not in fact similarly situated to the named plaintiffs, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice, and any remaining plaintiffs are permitted to move onto the trial stage of litigation. Lugo, 2008 WL 638237, at *3.

### III. DISCUSSION

As noted, we previously found that Plaintiffs satisfied the "very lenient burden" necessary for conditional certification of their collective action to be granted and notice to be issued. Now, we must perform a "specific factual analysis" of Named Plaintiff's claims in light of the subsequent discovery that has taken place and the workers that have opted into the

collective action, and determine whether Plaintiffs have satisfied the "higher level of proof" necessary to maintain certification. Zavala, 691 F.3d at 537.

In light of the numerous differences and few similarities between Named Plaintiff and Opt-In Plaintiffs, we find that Named Plaintiff has failed to establish that he and Opt-In Plaintiffs are similarly situated. It must be stressed that the burden is on Named Plaintiff to establish that Plaintiffs have met the similarly situated requirement. Id. At first glance, a few of the factors used by the Third Circuit unite Named Plaintiff and Opt-In Plaintiffs supporting the use of collective action: Plaintiffs were subject to the same no overtime policy; Plaintiffs advance similar claims of unpaid overtime work; and Plaintiffs seek the same relief in the form of compensatory damages. However, the numerous differences between the class outweigh these similarities and support a holding requiring decertification of this FLSA collective action.

### A. Factual and Employment Settings of the Individual Plaintiffs

Named Plaintiff worked for Defendants primarily as a truck driver for one year from June 2012 to June 2013. (See Zachary Harrison Dep., pp. 6:8-9; 7:7-14 (stating that driving a truck was 90 to 95 percent of his job.)) Defendants plan to bring a defense that Named Plaintiff falls under the FLSA driver exemption, 29 C.F.R. § 782.3, which exempts all drivers covered by the Motor Carrier Act.[1] (Defs.' Mot. for Decert. at 6.) Defendants argue that Named Plaintiff can

---

[1] For this analysis, the Court must look at both the FLSA and the Motor Carrier Act. The FLSA driver exemption defines a "driver" as "an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce." 29 C.F.R. § 782.3(a). Congress enacted the Motor Carrier Act in 1935. 49 U.S.C. § 31502. Congress empowered the Secretary of Transportation to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." Id. § 31502(b). Section 13102 of the Motor Carrier Act defines "motor carrier" as a "person providing motor vehicle transportation for compensation." Id. § 13102(12). The Motor Carrier Act exemption provides that the overtime provisions of the Fair Labor Standards Act do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Id. § 213(b)(1). The "fundamental test" for determining whether the Secretary of Transportation has jurisdiction to regulate a motor carrier employee is if "the employee's activities

contest this defense on "issues relating to vehicle size of some vehicles he drove, how much intra or inter-state travel took place, and other driving related arguments." (See id.)

Named Plaintiff issued notices to members of a class defined as follows:

> (i) all non-exempt employees (including those improperly categorized as independent contractors) employed by DelGuerico's Wrecking & Salvage, Inc. after September 13, 2010, ii) who worked overtime hours but were not paid overtime wages of at least one and one half times the applicable regular wage rate for each hour worked beyond forty (40) hours in a given work week at any time during their employment and iii) opt in to this collective action.

(See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 2.)  Plaintiff filed opt-in forms for the following individuals:

1. Joel Harrison - He worked as a mechanic for Defendants and testified that he never once worked more than 40 hours. (See Joel Harrison Dep., pp. 6:21-24; 10:20-23.) Defendants plan to argue that Joel Harrison, if it is found he worked in excess of forty hours, falls under the Motor Carrier Act's mechanical exemption as defined in the FLSA.[2]  (Defs.' Mot. for Decert. at 7.)

2. Kayla Huhn - She worked for Defendants from 2012 to 2014 as a secretary. (See Kayla Huhn Dep., pp. 5:19-20; 6:4-5.) Defendants will contend that she is exempt under the FLSA as an "executive assistant." (Defs.' Mot. for Decert. at 7-8.); see also 29 C.F.R. § 541.203(d) ("An executive assistant or

---

affect safety of operation." Levinson v. Spector Motor Serv., 330 U.S. 649, 671 (1947).  If this test is satisfied, the Secretary may regulate an employee's qualifications and maximum hours of service pursuant to Section 31502.  Id.

[2] For the mechanic's exemption to apply, the mechanic must actually perform "inspection, adjustment, repair or maintenance work on the motor vehicles themselves (including trucks, tractors and trailers, and buses) and [must be], when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways."  29 C.F.R. § 782.6(a).

administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance.").

3. Tyler Keeping - He worked for Defendants for approximately 14 months primarily doing yard maintenance, but he occasionally did maintenance work on the trucks. (See Tyler Keeping Dep., pp. 7:2-4; 19:22-21:19.) He testified that he never drove the same types of trucks driven by Named Plaintiff. (Id. p. 24:10-15.)

4. Larry Snyder, Jr. - He worked for Defendants for approximately eight months with job responsibilities primarily consisting of sorting through recycling while also performing vehicle maintenance at times. (See Larry Snyder, Jr. Dep., pp. 6:3-8; 9:4-10:9.) Larry Snyder stated that his job duties were dissimilar to Named Plaintiff's job duties. (Id. at p. 23-12-14.)

5. Justin Walsh - He worked for Defendants for approximately six months as a mechanic. (See Justin Walsh Dep., p. 21:3-20.) Defendants could argue that Justin Walsh falls under the Motor Carrier Act's mechanical exemption as defined in the FLSA. See 29 C.F.R. § 782.6(a).

6. Travis Coon - Little is known about this Opt-In Plaintiff because he has failed to respond to any discovery. (See Doc. No. 47.) On the listing of employees supplied by Defendants, he is listed as a "welder, driver helper/trainee." (Pl's Mot. to Conditionally Certify at Exh. B.) Co-Opt-In Plaintiff, Larry Snyder, Jr., was his "best friend' and stated Mr. Coon primarily performed truck

maintenance. (See Larry Snyder, Jr. Dep., pp. 6:20-7:9.) Defendants argue that Travis Coons falls under the Motor Carrier Act's Drivers' "Helpers" exemption as defined in the FLSA. See 29 C.F.R. § 782.4. He could also possibly be exempt as a mechanic under the FLSA. See 29 C.F.R. § 782.6(a).

As discussed earlier, Named Plaintiff bears the burden of establishing that he and the Opt-In Plaintiffs are in fact similarly situated. Zavala, 691 F.3d at 537. The burden of demonstrating that class members are "similarly situated" is significantly higher at the decertification stage. See Moss, 201 F.R.D. at 409. Named Plaintiff attempts to prove that Plaintiffs are similarly situated by relying almost entirely on the fact they were all subject to the same "No Overtime Ever" policy. (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 5) (stating that "[a]ll Plaintiffs were subject to Defendant's "No Overtime Ever" Policy. As such, regardless of differences in job duties, the Plaintiffs are similarly situated.")

Having the same policy apply to all employees is undoubtedly material to our analysis. Andrako, 788 F. Supp. 2d at 379 (stating that "[p]laintiffs are correct that whether they were impacted by a 'single decision, policy, or plan' is material to my analysis of the variations in Plaintiffs' factual and employment settings."). However, Named Plaintiff's argument that such a situation is dispositive is misplaced since multiple courts have found that plaintiffs were not similarly situated even though there was a single policy that applied across the board to all the employees in a FLSA collective action. See Zavala, 691 F.3d at 538 ("[c]onsidering the numerous differences among members of the proposed class in light of the alleged common scheme's minimal utility in streamlining resolution of the claims, we conclude that the Plaintiffs have not met their burden of demonstrating that they are similarly situated"); Bamgbose v. Delta–T Grp., Inc., 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (finding that despite being subject

to a uniform policy of considering all workers independent contractors, the plaintiffs are similarly situated because "the record demonstrates that the healthcare workers have a wide array of skills, responsibilities, and experiences").

Named Plaintiff relies on the case of Andrako alleging that it found that "[a] court should not decertify the class where the plaintiffs produce substantial evidence of a single decision, policy or plan." (See id. at 3-4) (citing Andrako, 788 F. Supp. 2d at 378). This is a complete mischaracterization of the Andrako case as that sort of language appears nowhere in the opinion.[3] The court simply stated that a "single decision, policy, or plan is material to [their] analysis of the variations in Plaintiffs' factual and employment settings." See id. at 379. The policy not to pay overtime wages is not dispositive, as Named Plaintiff contends; rather, it is ultimately just a material factor this Court will consider amid the various remaining factors.

One of these remaining factors the Third Circuit looks to is whether "the plaintiffs are employed in the same corporate department, division, and location." Zavala, 691 F.3d at 537. Here, Named Plaintiff simply states that all Plaintiffs are similarly situated, but he fails to elaborate on the issue. (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 5-6.) Named Plaintiff has made no showing that his job responsibilities are the same or similar to those of the remaining members of the proposed class, or that Opt-In Plaintiffs could properly be classified as

[3] Named Plaintiff goes on to make further mischaracterizations. Named Plaintiff states that "differences in job duties and job titles are not relevant, as Plaintiffs were subject to a uniform policy." (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 5) (citing Andrako, 788 F. Supp. 2d at 379). Again, the Andrako case focused on a single policy being an important factor in their analysis, but never did the court state that the other factors were irrelevant when you have a situation of a single policy that applies to all employees. Named Plaintiff then states "[b]ecause Plaintiff has proven, not just by a preponderance of the evidence, but by admission of Defendant, that there existed a uniform policy not to pay overtime applicable to all employees regardless of job duties, the Court's inquiry can end here, and the motion must be denied." (Id. at 6) (citing Zavala, 691 F.3d at 535). Citing Zavala after that sentence is deceitful as that case only found that a plaintiff would have to prove by a preponderance of evidence that the plaintiffs are similarly situated. Zavala, 691 F.3d at 537. Not only did Named Plaintiff cite the incorrect page regarding the preponderance of evidence holding, he appears to try and allude that Zavala found that a single policy that applies to all employees is dispositive in a court's determination of whether the plaintiffs are similarly situated, which is not the case.

non-exempt employees. In fact, Named Plaintiff does not even discuss the job responsibilities of the Opt-In Plaintiffs. Defendants, on the other hand, refer to the depositions of Plaintiffs and address in detail the dissimilarities among the job duties of Named Plaintiff and Opt-In Plaintiffs. (Defs.' Mot. for Decert. at 3-8.) Defendants contend that these dissimilarities favor decertification of this collective action. This Court agrees with Defendants as Named Plaintiff has failed to establish in anyway how Plaintiffs' jobs are similar enough to establish a factor in favor of certification of this collective action. There is no further illustration of this ineptitude than Named Plaintiff's failure to remove Opt-In Joel Harrison from this matter or further elaborate on how he is similarly situated in a case based on non-paid overtime hours considering he admitted that he never worked in excess of forty hours. (See Joel Harrison Dep., p. 10:20-23.)

Named Plaintiff and Opt-In Plaintiffs all work at the same location, but their job titles and responsibilities vary greatly. Notably, not one Opt-In Plaintiff even alleges to have a similar job position to Named Plaintiff. (See Tyler Keeping Dep., pp. 23:20-24:13; Larry Snyder, Jr. Dep., pp. 20:14-22:11; Justin Walsh Dep., pp. 26: 3-14; Kayla Huhn Dep., p. 6:4-14; Joel Harrison Dep., p. 13:14-16.) The positions include a mechanic, secretary, recycling sorter, driver helper, and someone performing yard maintenance. These positions have diverse responsibilities and duties that differ greatly among themselves and from Named Plaintiff's position as a driver. These vast range of job duties are not only a factor weighing against collective action, but they also create a situation where certain defenses are applicable to individual claimants based on their unique duties and responsibilities.

### B. Defenses Available to Defendants

It is these individualized defenses that ultimately swing the pendulum towards this Court finding that decertification is appropriate. The employee-by-employee inquiries into whether

each Plaintiff is exempt further differentiates the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action. "An employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA." Orton v. Johnny's Lunch Franchise, LLC, 668 F.3d 843, 846 (6th Cir. 2012). In determining whether individual claimants are similarly situated under the FLSA, this Court recognizes the importance of considering numerous defenses available to an employer "because individualized defenses prevent an efficient proceeding with a representative class." Moss, 210 F.R.D. at 410.

Here, Defendants have pointed to various defenses regarding the exempt status of Plaintiffs under the FLSA and what sort of inquiries the Court would need to perform in order to determine if they apply. On the other hand, Named Plaintiff has not provided any evidence to the Court that these defenses can be settled quickly with little diversion occurring from the main case. Named Plaintiff responds by simply stating that the application of a test for an exemption for an employee is a "simple matter" and does not require decertification. (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 6.) It must be stressed that Named Plaintiff bears the burden of proof that Plaintiffs are similarly situated. Simply stating that the defenses would be easily applied by this Court is not enough to meet the heightened standard at this decertification stage.

In fact, we disagree with Named Plaintiff that this would be a simple matter. The exempt or non-exempt status would likely have to be determined on an employee-by-employee basis; therefore, litigating this case as a collective action would be far from efficient. For instance, the determination of whether Kayla Huhn is exempt as an executive assistant would require this Court to delve into her job duties and make a determination if she had the requisite amount of discretion in her position. Ms. Huhn would likely then present evidence that her job largely consists of menial tasks like running errands. This illustrates just one of the exemptions that are

possible if this case was to proceed as a collective action. The remaining exemption defense determinations would require varying standards and facts since each defense would be unique to each Plaintiff based on their job responsibilities. Named Plaintiff and Opt-In Plaintiffs possibly would be subject to various exemptions including: Named Plaintiff being exempt under the driver exemption of Section 782.3 of the FLSA; Joel Harrison and Justin Walsh being exempt under the mechanic exemption of Section 782.6(a) of the FLSA; Kayla Huhn being exempt under the FLSA as an "executive assistant;" and Travis Coon being exempt under Section 782.4 of the FLSA as a driver helper or under Section 782.6 of the FLSA as a mechanic.

Named Plaintiff attempts to rely on Moss asserting that the court in that case did not decertify when it was faced with applying FLSA employee exemption tests. 201 F.R.D. at 410-11. Named Plaintiff's reliance on this case is misplaced. The Moss court was dealing with an exemption that would more efficiently be determined since all opt-in plaintiffs had substantially similar job duties. Id. That is not the case here as there are various job duties among Plaintiffs, which results in numerous possible exemptions. With unique exemptions applicable to multiple Plaintiffs, this Court would have to apply numerous tests applying different factors for each individual Plaintiff while analyzing their various diverse job responsibilities. But see Andrako, 788 F.Supp.2d at 382 (finding it to be more efficient to litigate the case as a collective action when Defendant asserted similar defenses against most, if not all, class members).

Defendants also asserts that the statute of limitations defense precludes collective treatment of the Plaintiffs in this case. (Defs.' Mot. for Decert. at 6-7.) Defendants contend that this is the case because the defense could possibly apply to multiple Opt-In Plaintiffs individually, but not Named Plaintiff who, Defendants admit, brought his claim in a timely fashion. See id. Named Plaintiff responds by incorrectly asserting that this defense goes to

13

damages and does not require decertification. (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 6.) Named Plaintiff is correct in asserting that issues relating to damages do not require decertification. See Andrako, 788 F. Supp. 2d at 381 ("The fact that individualized findings regarding damages may be necessary does not require class decertification") (citing Plewinski v. Luby's Inc., No. H–07–3529, 2010 WL 1610121, at *6 (S.D.Tex. Apr. 21, 2010)). However, the statute of limitations does not relate to damages; rather, it relates to liability as the case Named Plaintiff relies upon makes clear. See Moss, 201 F.R.D. at 410 (considering the statute of limitations as a possible liability defense under the FLSA, but concluding that it would not make case unmanageable as a collective action).

Named Plaintiff further goes on to state that "to examine this defense, the Court need only review the applicable dates and make a general finding that the Defendant's admitted policy meets the FLSA's willfulness standard." (See Pl's Resp. in Opp'n to Defs.' Mot. for Decert. at 6.) The willfulness standard only applies to extending FLSA's statute of limitations to three years. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988) (noting that the FLSA has a normal two year statute of limitations, but in 1966 Congress enacted a three year exception for willful violations). Defendants have contended that some Opt-In Plaintiffs are completely time barred even if willfulness is proven and the time limit is extended to three years. (Defs.' Mot. for Decert. at 7.) In response, Named Plaintiff neglects to adequately address Defendants' contention directly that even with a three year statute of limitations some Opt-In Plaintiffs are still time barred. Named Plaintiff has not even come close to proving that this defense is manageable as a collective action under the FLSA as all he has done is put forth facts that incorrectly conclude that the statute of limitations is a damages issue while also making a general statement pertaining to the FLSA's willfulness standard.

### C. Fairness and Procedural Considerations

Finally, with regard to the fairness and procedural considerations, we recognize the general objectives of a § 216(b) collective action in lowering costs to plaintiffs and limiting the controversy to one proceeding. See generally Sperling, 493 U.S. at 170. However, this Court must also consider the manageability of the class and the fairness to Defendants. Due to the numerous different job titles and responsibilities, as well as the multiple defenses applicable to the individual Plaintiffs, we conclude that the fairness and procedural considerations weigh against a collective action.

### IV. CONCLUSION

For the foregoing reasons, we conclude that Named Plaintiff has failed to satisfy his heightened burden to establish that he is similarly situated to the remainder of the Opt-In Plaintiffs. Named Plaintiff relies almost entirely on the fact that he and Opt-In Plaintiffs were subject to the same "No Overtime Ever" policy. This similarity of having a policy applicable to all Plaintiffs is not dispositive and does not outweigh the numerous differences among Plaintiffs. For these reasons, as well as the fairness and procedural considerations, this Court will grant Defendants' Motion for Decertification.

An appropriate Order follows.